**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DANIEL MAXIE,                              No. C-04-2255 MMC

11            Plaintiff,                        **ORDER GRANTING IN PART AND
                                                DENYING IN PART THIRD-PARTY**
12      v.                                      **DEFENDANT U.S. SHIP MANAGEMENT,
                                                INC.'S MOTION FOR SUMMARY**
13   HORIZON LINES, LLC and MATSON              **ADJUDICATION; VACATING HEARING**
     NAVIGATION COMPANY,
14                                              (Docket No. 31)
              Defendants.
15

16   _____/

17

18         Before the Court is third-party defendant U.S. Ship Management, Inc.'s ("USSM")

19   motion for summary adjudication, filed September 2, 2005.  Defendant and third-party

20   plaintiff Horizon Lines, LLC ("Horizon") and defendant Matson Navigation Company

21   ("Matson") have filed separate oppositions to the motion, to which USSM has filed a single

22   reply.  Plaintiff Daniel Maxie ("Maxie") has not filed a response to USSM's motion.  Having

23   read and considered the papers filed in support of and in opposition to the motion, the

24   Court finds the matter appropriate for resolution without oral argument, see Civil L.R. 7-

25   1(b), and hereby VACATES the October 28, 2005 hearing.  For the reasons set forth

26   below, USSM's motion is GRANTED in part and DENIED in part.

                                    **BACKGROUND**

27         Maxie filed the instant action against Horizon and Matson on June 8, 2004.  Maxie

28   alleges that he was employed as Chief Cook on a vessel owned by Horizon, the M/V

1  Horizon Expedition ("Expedition").  (See Compl. ¶¶ 3-4.)  On or about March 3, 2003, in the

2  course of preparing a meal for the crew of the Expedition, Maxie alleges, he suffered a

3  herniated disc in his lower back while carrying a heavy pot of prime ribs and vegetables.

4  (See id. ¶ 7.)  Maxie further alleges that, at the time of his injury, he had been fatigued and

5  sleep-deprived due to his having been required to work numerous 14-15 hour days, seven

6  days per week, for the previous five months aboard the Expedition.  (See id. ¶ 6.)

7       Thereafter, on January 7, 2004, Maxie was employed by Matson as Chief Cook on

8  Matson's vessel, the S.S. Maui ("Maui").  (See Compl. ¶¶ 16-19.)  On that date, while the

9  Maui was en route to Seattle, Washington from Honolulu, Hawaii, the vessel, according to

10  Maxie, "was taking very heavy seas, and experiencing periodic extreme rolls."  (See id. ¶

11  19.)  Maxie alleges that, at approximately 10:30 a.m., he was working in the galley when

12  the vessel took several hard rolls, causing the soup warmer and rice cooker to slide along

13  the counter towards Maxie.  (See id.)  Maxie further alleges that, in order to avoid being

14  struck, he attempted to jump out of the way, but slipped on water on the galley deck and

15  "slam[med] into the steam table on the next roll of the vessel, sustaining further injuries to

16  his low back."  (See id.)  Maxie contends that said injury aggravated the lower back injury

17  he suffered onboard the Expedition on March 3, 2003.  (See id. ¶ 21.)

18       Maxie asserts causes of action against Horizon and Matson for unseaworthiness,

19  maritime negligence in violation of the Jones Act, and for maintenance and cure.  In

20  particular, Maxie alleges that Horizon failed (1) to furnish him with a safe and seaworthy

21  vessel; (2) to furnish an adequate number of crew to perform "steward's department duties"

22  without requiring Maxie to work excessive overtime; (3) to provide a seaworthy ventilation

23  system for the galley and mess "as the one available emitted dust and dirt onto galley and

24  mess room surfaces, and required daily lengthy additional effort to maintain cleanliness of

25  galley and mess surfaces"; (4) to furnish him with "fit, proper, adequate, and sufficient

26  equipment, including but not limited to back brace, corset or support, aid and assistance to

27  perform his duties"; and (5) to identify, assess, and manage crew fatigue in the stewards'

28  department, caused by excessive overtime and sleep deprivation during Maxie's service

2

1  aboard the Expedition.  (See id. ¶¶ 8, 14.)  Maxie alleges that Matson failed (1) to furnish

2  him with a safe and seaworthy vessel; (2) to furnish him with "fit, proper, adequate, and

3  sufficient equipment, including but not limited to adequate back brace, corset or support,

4  aid and assistance in connection with his assigned tasks"; (3) to provide for a bracket or

5  other appurtenance to secure the soup warmer and rice cooker; (4) to provide a reasonably

6  fit and non-skid deck or non-skid surface in the galley; and (5) to provide the galley with a

7  warning that the vessel was about to encounter sea conditions which would produce

8  extreme rolling.  (See id. ¶ 20.)

9      On February 11, 2005, Horizon filed a third-party complaint against USSM.  Horizon

10  alleges that on July 17, 2003, after Maxie's March 3, 2003 injury onboard the Expedition,

11  Maxie was found fit for duty by his treating physician and returned to work as a merchant

12  seaman for USSM.  (See Third Party Complaint ("TPC") ¶ 7.)  According to Horizon, Maxie,

13  on August 16, 2003, while employed as a merchant seaman on USSM's vessel Sealand

14  Endurance, suffered "another injury to the same part of his body involved in his claim

15  against Horizon."  (See id. ¶ 8.)  Horizon further alleges that if Maxie "sustained any injury

16  or damages by reason of matters alleged in his complaint against Horizon Lines, . . . said

17  injury or damages were not caused by or contributed to by any negligence,

18  unseaworthiness, or fault of Horizon Lines . . . but resulted from or [were] enhanced by the

19  negligence, unseaworthiness, and fault of US Ship."  (See id. ¶ 9.)  Horizon seeks

20  "judgment in favor of plaintiff and against [USSM] pursuant to Rule 14(c) [of the Federal

21  Rules of Civil Procedure] for all damages sought by him against Horizon Lines, if he is

22  found to be entitled to recover any damages, and not against Horizon Lines."[1]  (See id.,

23

24      [1] Rule 14(c) authorizes a defendant against whom an admiralty or maritime claim
has been asserted to file a third-party complaint against a third-party defendant who may
be wholly or partly liable to the plaintiff or to the third-party plaintiff.  See Fed. R. Civ. P.

25  14(c).  "In such a case the third-party plaintiff may also demand judgment against the third-
party defendant in favor of the plaintiff, in which event the third-party defendant shall make

26  any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the
manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced

27  it against the third-party defendant as well as the third-party plaintiff."  Id.  "As a
consequence, plaintiff is forced to assert his claims directly against the third-party

28  defendant."  See Royal Insurance Co. of America v. Southwest Marine, 194 F.3d 1009,

1   Prayer for Relief ¶ 1.)

2         USSM now seeks summary adjudication of the claims asserted against it for

3   negligence and unseaworthiness, and that "USSM cannot be held responsible for any

4   share of continuing maintenance and cure payments unless it is eventually determined that

5   neither Horizon Lines nor Matson Navigation is liable on the claims that Maxie has asserted

6   against them."  (See USSM's Motion at 1.)

7                                    **LEGAL STANDARDS**

8         **A.  Summary Judgment/Adjudication**

9         Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as

10  to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,

11  answers to interrogatories, and admissions on file, together with the affidavits, if any, show

12  that there is no genuine issue as to any material fact and that the moving party is entitled to

13  judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that

14  may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

15  248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

16  reasonable jury to return a verdict for the nonmoving party.  See id.  The Court may not

17  weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

18  believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

19  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

20  (en banc) (citing Liberty Lobby, 477 U.S. at 255).

21        The moving party bears the initial responsibility of informing the district court of the

22  basis for its motion and identifying those portions of the pleadings, depositions,

23  interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the

24  absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

25  323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

26  party's burden is discharged when it shows the court that there is an absence of evidence

27  _____

28  1018 (9th Cir. 1999) (internal quotation and citation omitted).

                                         4

to support the nonmoving party's case.  See id. at 325.

Where the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial."  See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor.") (emphasis in original).

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e); see also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show that the issue will be resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions of the truth at trial.  See id.

**B. Jones Act Negligence**

The Jones Act provides a federal cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment."  See 46 U.S.C. App. § 688(a).  "The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work."  Ribitzki v. Canmar Reading & Bates, Ltd. Partnership, 111 F.3d 658, 662 (9th Cir. 1996).  To recover under the Jones Act, a plaintiff must prove that the defendant was "negligent and that this negligence was a cause, however slight, of his injuries."  See id.  "The quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence, . . . and even the slightest negligence is sufficient to sustain a finding of liability."  Id. (internal quotation and citation omitted).  Thus, "a seaman must demonstrate only that his employer's negligence played any part, even the slightest, in producing his injury."  See id. n. 3.  Nevertheless, "[a]n employer is only liable under the Jones Act if the employer or its agent either knew or

should have known of the dangerous condition" that contributed to the plaintiff's injury.  See id. at 663.

**C. Unseaworthiness**

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence."  Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498 (1971).  "A shipowner has an absolute duty to furnish a seaworthy ship," which is a ship "reasonably fit for its intended use."  See Ribitzki, 111 F.3d at 664.  "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."  Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960).  "A vessel's condition of unseaworthiness may arise from any number of circumstances, including an insufficient number of men assigned to perform a shipboard task, or the existence of a defective condition, however temporary, on a physical part of a ship."  Ribitzki, 111 F.3d at 664.    To establish a claim of unseaworthiness, where a defective condition rather than a deficient crew is at issue, the Ninth Circuit has held that a plaintiff must establish: "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries."  See id.  "Causation is established by showing that the unseaworthy condition was a substantial factor in causing the injury."  Id. at 665.

"The shipowner's actual or constructive knowledge of an unseaworthy condition is not essential to its liability."  Id. at 664.

**D. Maintenance and Cure**

"Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery."  Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).  A seaman who is entitled to receive maintenance and cure may recover "a living allowance during the recovery period

6

1  (maintenance), reimbursement for medical expenses (cure), and unearned wages for the

2  period from the onset of injury or illness until the end of the voyage."  See Gardiner v. Sea-

3  Land Services, Inc., 786 F.2d 943, 946 (9th Cir. 1986).  The duty to provide maintenance

4  and cure "does not rest upon negligence or culpability," and is not "restricted to those cases

5  where the seaman's employment is the cause of the injury or illness."  See Calmar S.S.

6  Corp. v. Taylor, 303 U.S. 525, 527 (1938).

7      Moreover, "if the seaman can establish that he had not in fact fully recovered, his

8  return to work [on another vessel] does not terminate his right to maintenance and cure

9  from the vessel in whose service he was injured or became ill."  See Permanente

10  Steamship Corp. v. Martinez, 369 F.2d 297, 299 (9th Cir. 1966).

11                            **DISCUSSION**

12      **A.  Evidence of Maxie's Injury While Onboard the Endurance**

13      Maxie testified at deposition that he signed on to USSM's ship, the Endurance, on

14  August 15, 2003 in Oakland, California, and sailed that evening.  (See Wittenberg Decl. Ex.

15  A. (Maxie Dep.) at 284:1-9.)  Maxie was employed as the "Chief Steward."  (See id. at

16  285:25-286:2.)  Maxie further testified that on September 18, 2003, the day before he left

17  the vessel, Maxie told the chief officer that he had suffered a "tweak" to his back on August

18  16, 2003, the day after the vessel set sail from Oakland.  (See id. at 297:3-17.)

19      Maxie testified he was rearranging boxes of food from one shelf to another in a

20  refrigeration unit, when he "twisted too much and then [he] got one of [his] little tweaks" of

21  "low back pain."  (See id. at 294:9-20, 297:9-14.)  He was reaching up to the top shelf at

22  the time, which was located approximately six feet six inches above the floor; Maxie is

23  approximately six feet four inches tall.  (See id. at 295:1-25.)  Maxie testified that did not

24  feel any pain at that time, but the next day, he felt pain on the left side of his back, above

25  his buttocks.  (See id. at 298:11-24, 303:8-14.)  Maxie testified that he attributed the pain to

26  his attempt to move two boxes at a time, instead of moving one box at a time.  (See id. at

27  299:13-16.)

28      Maxie testified he told the chief officer that it was an old injury that had flared up

7

1  again, and further testified that the pain was precisely like the pain he had felt in his lower

2  back prior to joining the Endurance.  (See id. at 299:17-25.)  Maxie also testified that the

3  pain he felt in connection with the injury he suffered on Horizon's ship, the Expedition, was

4  experienced not on the left side, but on the "right side, lower right side, down [his] leg," with

5  "numbness and tingling" down to his ankle, (see id. at 305:18-306:11), and that he was still

6  suffering from that numbness and tingling when he saw a doctor the day before he joined

7  the Endurance.  (See id. at 307:17-23.)

8      Maxie testified that after he left the Endurance, he "had problems laying down and

9  sitting down and sleeping," and that, as a result, he went to the doctor and went "to therapy

10  again for them to strengthen [his] back up again."  (See id. at 303:15-23.)

11  **B.  Negligence and Unseaworthiness**

12      There is no evidence that any negligence by USSM, or any unseaworthiness of the

13  Endurance, contributed in any way to Maxie's injury onboard the Endurance.  As noted,

14  Maxie has chosen not to oppose USSM's motion for summary adjudication.  Neither

15  Horizon nor Matson has submitted any evidence sufficient to establish a triable issue of

16  material fact on the issues of negligence or unseaworthiness.[2]

17      Horizon argues that if the ship's officers had inspected Maxie's work area, "they

18  would have discovered the absence of a tall enough ladder to provide Maxie with safe and

19  adequate access to the top shelf so he would not have had to 'bend and twist' his body."

20  (See Horizon Opp. at 4.)  Horizon has submitted no evidence, however, that such a ladder

21  was not available for Maxie to use.  Moreover, even if a ladder were not available, the

22  undisputed evidence is that Maxie and the shelf he was reaching for at the time of his injury

23  were approximately the same height.  (See Wittenberg Decl. Ex. A. (Maxie Dep.) at 295:1-

24  25.)  There is no evidence that Maxie needed a ladder in order to reach the shelf.

25      Horizon also suggests that USSM was negligent by failing to provide Maxie with a

26  "Seaman's Declaration of Health" form prior to USSM's requiring Maxie to go to work

27  _____

28      [2] With respect to the issues of negligence and unseaworthiness, Matson joins in
   Horizon's arguments.  (See Matson Opp. at 1-2.)

putting away the ship's stores and, thus, by failing to determine that Maxie was fit to do his job.  Maxie testified, however, that he did fill out such a form, and that he checked the box for "backache or back injury."  (See id. at 309:2-24.)  Maxie further testified that although he felt he was being rushed to fill out the form because the ship was leaving that evening, the reason he did not reveal the numbness and tingling in his leg was because "they had no space for that" and he "figured they probably know when you have back problems that's some of the symptoms that might be with it."  (See id. at 308:10-14, 310:6-15.)  The evidence is undisputed, moreover, that Maxie revealed the existence of the numbness and tingling in his leg to the doctor who cleared him for duty the day before he joined the Endurance.  (See id. at 306:12-308:6.)  Thus, the evidence is undisputed that Maxie was cleared for duty on the Endurance after having revealed the full extent of his injury.  There is no evidence that the manner in which USSM required Maxie to fill out the "Seaman's Declaration of Health" played even the slightest part in producing his injury.

Accordingly, the Court will GRANT USSM's motion for summary adjudication on the issues of negligence and unseaworthiness.

**C. Maintenance and Cure**

USSM also seeks summary adjudication with respect to the issue of its duty to pay maintenance and cure.  In particular, USSM seeks summary adjudication that it "is not obligated for any further maintenance and cure payments unless it is ultimately determined that Horizon Lines and Matson Navigation are likewise free from fault and are deemed to have provided vessels that were seaworthy in pertinent respects."  (See USSM's Motion at 12.)

As noted, a shipowner's duty to pay maintenance and cure to an injured seaman is not dependent on a showing of fault, and extends until the injured seaman "reaches maximum medical recovery."  See Calmar, 303 U.S. at 527; see also Vaughan, 369 U.S. at 531.

Where a seaman is injured onboard more than one ship, he may seek maintenance and cure from any of the shipowners, but may not obtain a double recovery.  See Gooden

v. Sinclair Refining Co., 378 F.2d 576, 580 (3d Cir. 1967).  If the injury was not caused by the negligence of any of the shipowners, or the unseaworthiness of any of the ships, the duty to pay maintenance and cure is shared equally by the shipowners.  See id.

Where there is a finding of negligence or unseaworthiness against one of the shipowners, the injured seaman may not obtain "both damages and maintenance and cure if there would result any duplication of recovery upon a single claim."  See id. at 581.  "When a seaman in the same suit proceeds against one party for damages and against another for maintenance and cure," courts place "the primary liability upon the party who has violated a duty owed the seaman, the maintenance and cure claim being payable only if recovery for damages is not available."  See id.  "To the extent a shipowner proves that payments made in satisfaction of a maintenance and cure obligation have reduced or eliminated a concurrent claim which a seaman but for the prohibition against double recovery could assert against another party absent a release, the shipowner is entitled to reimbursement from the other party in such amount as will cause the ultimate liability to be placed: 1) by means of contribution, equally upon all shipowners with coextensive maintenance and cure obligations; or 2) by means of exoneration, fully upon the party with a primary obligation in damages arising out of negligence, unseaworthiness, or other violation of duty."  Id.

In the instant action, USSM correctly points out that it will be jointly liable with Horizon and Matson for maintenance and cure if none of the defendants are found to be liable for negligence or unseaworthiness.  If either Horizon or Matson, or both, are found liable for negligence or unseaworthiness, however, USSM is not completely exonerated from liability for maintenance and cure.  Rather, USSM would be secondarily liable for maintenance and cure, to the extent Maxie is unable to collect a judgment from Horizon and/or Matson.  See Black v. Red Star Towing & Transportation Co., Inc., 860 F.2d 30, 33 (2d Cir. 1988) (en banc) (noting long-standing law that "primary liability for all the damages sustained by the seaman should fall on the tortfeasor, and that the shipowner [who is not at fault] would be responsible for maintenance and cure only in the event of the tortfeasor's

10

failure to pay").

Accordingly, USSM's motion for summary adjudication that it "is not obligated for any further maintenance and cure payments unless it is ultimately determined that Horizon Lines and Matson Navigation are likewise free from fault and are deemed to have provided vessels that were seaworthy in pertinent respects," (see USSM's Motion at 12), will be DENIED.

**CONCLUSION**

For the reasons set forth above, USSM's motion for summary adjudication is hereby GRANTED in part and DENIED in part as follows:

1.  USSM's motion for summary adjudication as to the claims against it for negligence and unseaworthiness is GRANTED.

2. USSM's motion for summary adjudication as to the claim against it for maintenance and cure is DENIED.

This order terminates Docket No. 31.

**IT IS SO ORDERED.**

Dated: October 17, 2005

_____
MAXINE M. CHESNEY
United States District Judge

11